REL:  January 20, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2022-2023

_____

### 2210320
_____

## Michelle Rodriguez Lopez

## v.

## Marco Rodriguez

### Appeal from Coffee Circuit Court
### (DR-20-900126)

EDWARDS, Judge.

Michelle Rodriguez Lopez ("the wife") appeals from a judgment entered by the Coffee Circuit Court ("the trial court") in her divorce action against Marco Rodriguez ("the husband").

2210320

The parties married in April 2008; they had one child ("the child"), a son who was born in November 2008. The wife also has a child by a previous marriage; that child resided with the parties during the marriage. The parties resided in a house that the husband owned in Enterprise until July 2009, when they moved to Texas after the husband left military service in May 2009. The parties remained in Texas until they moved to Puerto Rico early in 2019. The respective moves were related to the husband's career with the United States Department of Homeland Security ("DHS"). The wife was a stay-at-home mother during the marriage.

In September 2019, the parties separated. Upon the separation, the wife and the children moved from Puerto Rico to Enterprise, where they resided with the wife's mother; the Enterprise house was being rented to a third party ("the Enterprise rental house"). The husband remained in Puerto Rico, where he had committed to remain, presumably to continue working for DHS, through 2023.

The wife removed $45,000 from the parties' joint bank account when she moved to Enterprise in 2019; according to her, she left

2

approximately $90,000 in that account. The husband testified that those remaining funds were subsequently used to pay most of the parties' $47,112 federal and territorial income-tax liability for the 2019 tax year, to pay living expenses of the wife and the children after the separation, and to pay the wife $12,500 for a 2011 Toyota Venza automobile that was awarded to her in a pendente lite order, which is discussed infra.

In August 2020, the wife filed a complaint in the trial court seeking a divorce from the husband. She subsequently amended her complaint. The husband filed an answer denying the pertinent allegations made by the wife; he also filed a counterclaim for a divorce. The wife filed an answer denying the pertinent allegations in the husband's counterclaim.

The wife filed a motion for pendente lite support, and the trial court held ore tenus proceedings on that motion. In December 2020, the trial court entered a pendente lite order requiring the husband to pay the wife $750 per month for her support and $1,156 per month as child support. The pendente lite order also required the husband to pay $1,000 toward the shipping costs for the delivery to the wife of the 2011 Toyota Venza that was in Puerto Rico, to maintain the existing medical insurance on

the wife and the child, to pay the child's private-school tuition, to pay automobile insurance on the parties' respective automobiles, to pay all expenses associated with the marital residence in Puerto Rico, and to pay all expenses for the Enterprise rental house. We note that the wife was also receiving $700 per month as child support from the father of the wife's child from a previous marriage, who was 17 years old at the time of the pendente lite hearing and was scheduled to graduate high school in May 2021.

In April 2021, the trial court conducted ore tenus proceedings regarding the divorce petition and the counterclaim. On August 18, 2021, the trial court entered a judgment ("the August 18, 2021, judgment") divorcing the parties based on the ground of incompatibility of temperament, awarding the parties joint legal custody of the child, awarding the wife sole physical custody of the child, and awarding the husband visitation with the child. The August 18, 2021, judgment required the husband to pay the wife $1,156 per month as child support, excluding the months of June and July of each year, plus up to $500 per month for the child's private-school tuition and education fees. The child-

4

support exclusion for June and July each year was "to offset the travel expenses incurred [by the husband] in exercising his parenting time" with the child; the husband's visitation included, among other times, summer visitation for approximately six weeks and extended holiday visitation. The husband also was required to maintain medical and dental insurance on the child, and the parties were required to maintain respective $100,000 life-insurance policies designating the child as the primary beneficiary.

Regarding alimony and the division of the marital property, the August 18, 2021, judgment awarded the wife $750 per month "as periodic alimony" for 36 months; the personal property that was in her possession; a 2015 Honda CRV automobile; the balances in any bank accounts that were in only her name, which, according to her testimony, included $10,000 left from the $45,000 she had originally taken upon the parties' separation; and any retirement benefits that she had accumulated. Except as indicated, no evidence or testimony was presented as to the value at the time of trial (or the pendente lite hearing) of any of the aforementioned marital property awarded to the wife.

2210320

The August 18, 2021, judgment made a similar marital-property award to the husband, but the award included a Toyota 4-Runner automobile and the 2011 Toyota Venza, the latter of which the husband had purchased from the wife for $12,500 after the entry of the pendente lite order. The husband also received a 2017 Polaris ATV, which he had purchased for the child in December 2016 for $22,999, and a 2018 enclosed utility trailer for the ATV, which the husband had purchased in May 2018 for $8,295. The husband testified that the ATV had been purchased for the child to use with him and that the trailer had been purchased to avoid having to pay for a storage facility for the ATV; the husband wanted to keep those items for the son to enjoy. Except as indicated, no evidence or testimony was presented as to the value at the time of trial (or the pendente lite hearing) of any of the aforementioned marital property awarded to the husband.

For the "Division of Real Property," the August 18, 2021, judgment awarded the husband the Enterprise rental house, noting that he had purchased that property before the parties had married, that it was titled solely in his name, that it was subject to a mortgage, and that it had been

6

"primarily used as rental property during the parties' marriage." The husband was required to pay the mortgage note and all other expenses associated with the Enterprise rental house. No evidence or testimony was presented at the pendente lite hearing or at trial as to the value of the Enterprise rental house or the amount of the outstanding debt on the mortgage note on that property. The "Division of Real Property" also stated that the parties were "each … entitled to keep any and all other real property owned in their individual name, wherever situated," but there was no evidence or testimony presented indicating that any such property existed. In addition to paying the mortgage note on the Enterprise rental house, the husband further was obligated to pay the outstanding debt on the Toyota 4-Runner, the Toyota Venza, and the ATV, although no evidence or testimony as to the amounts owed on those vehicles was presented at the pendente lite hearing or at trial, and to pay all income-tax liability that had accrued during the marriage. We note that the husband also testified that he had paid, in addition to the parties' federal and territorial income-tax liabilities for the 2019 tax year, $49,343 in federal and territorial-income taxes for the 2020 tax year; no

evidence or testimony was presented regarding the parties' 2021 income-tax liabilities.

The wife timely filed a postjudgment motion. She argued that the trial court had erred by preventing her from "entering evidence or testimony through cross-examination of [the husband] regarding" his retirement plan, which was a thrift savings plan ("the husband's TSP account"), and that that error had resulted in an inequitable division of the marital property. She also argued that the periodic-alimony award was inadequate in amount and duration and that the trial court had erred by awarding the husband the Enterprise rental house, by requiring her to maintain a $100,000 life-insurance policy for the benefit of the child, and by granting the husband the two-month exception to his monthly child-support payments. After conducting a virtual hearing on the wife's postjudgment motion, the trial court entered an order on December 11, 2021, granting that motion, in part, by ordering a new trial as to the issues regarding the division of the husband's TSP account.

On January 6, 2022, the trial court conducted ore tenus proceedings as to the division of the husband's TSP account. During that new trial,

the husband introduced into evidence, without objection, an exhibit that included values for some of the marital property and debt obligations that had been awarded to the parties; that evidence was offered for purposes of evaluating the equity of any award from the husband's TSP account to the wife.[1]  On January 13, 2022, the wife filed a notice of appeal, and this court thereafter entered an order informing the parties that the wife's appeal would be held in abeyance pending the entry of a final judgment addressing the remaining issue of the husband TSP account.

On March 9, 2022, the trial court entered a new judgment awarding the wife $65,000 from the husband's TSP account, which had a value of $173,454.23 in September 2019, and confirming that all other terms of the August 18, 2021, judgment remained unchanged.  The wife timely filed a postjudgment motion, which the trial court denied.  The wife then

---

[1]At the beginning of the January 6, 2022, proceeding, the wife's counsel made arguments referencing the value of the Enterprise rental house.  No evidence or testimony in the record supports those arguments. See Ex parte Russell, 911 So. 2d 719, 725 (Ala. Civ. App. 2005) ("The unsworn statements, factual assertions, and arguments of counsel are not evidence.").

filed a motion to reinstate her appeal, and this court granted that motion and directed the parties regarding briefing.[2]

We will first dispose of a preliminary matter. The wife complains at several points in her brief about the husband's not providing adequate responses to discovery, particularly as to his income, credit-card expenditures, and telephone-call history; the wife sought the latter two items for purposes of proving the husband's alleged adultery. However, at the initial trial, the husband noted that he had filed objections to some of those discovery requests because of purported issues relating to his security clearance with DHS. The trial court addressed the discovery issues at the beginning of the initial trial and asked whether the parties "want[ed] to go ahead and try this case today understanding that we may

---

[2]On July 20, 2022, the wife filed a motion in this court alleging that she had discovered new evidence and requesting leave to file in the trial court a motion pursuant to Rule 60(b), Ala. R. Civ. P., and a stay of the appeal pending a decision on her Rule 60(b) motion. This court granted the wife's request for leave to file a Rule 60(b) motion in the trial court and denied her request for a stay of her appeal. In her appellate brief, the wife alleges that, on July 27, 2022, the trial court entered an order denying her Rule 60(b) motion, and she has attached a purported copy of that order as an exhibit to her appellate brief. That purported order is not part of the record on appeal and has not been considered by this court. See Etherton v. City of Homewood, 700 So. 2d 1374, 1378 (Ala. 1997).

or may not have all these records because -- or do you want some additional time to try to look at these records [with redactions]." The husband's counsel stated that he wanted to proceed with the trial and the wife's counsel stated: "We will go forward and just --." The trial court interrupted that statement by stating "[a]ll right" and indicating that they would proceed with the trial and address any evidentiary issues as they arose and one of the parties objected. The trial court also stated that it would reserve any issue regarding sanctions for the end of the trial. The wife's counsel made no statement in response to the trial court's proposed plan of action and registered no objection that the trial court had erred by proceeding with the trial. In her appellate brief, the wife makes no legal argument, with citation to authority, that the trial court erred as to any discovery ruling or as to its decision to proceed with the trial in April 2021. See Rule 28(a)(10), Ala. R. App. P.; Dykes v. Lane Trucking, Inc., 652 So. 2d 248, 251 (Ala. 1994); see also White Sands Grp., L.L.C. v. PRS II, LLC, 998 So. 2d 1042, 1058 (Ala. 2008). Under the circumstances, we will not consider whether the March 9, 2022, judgment should be reversed based on the husband's alleged lack of responsiveness

11

to the wife's discovery requests or based on the trial court's decision to proceed with the trial in April 2021.[3]

The wife argues that the husband failed to offer substantial evidence of the value of the husband's TSP account after the parties' separated in September 2019. According to her, she was entitled to a share of the value of the husband's TSP account as of the date of the April 2021 initial trial or the January 2022 trial as to the division of the husband's TSP account, and, thus, she says, the property division is unsupported by the evidence.[4] The husband responds by arguing that

---

[3]The wife asserts several times in her appellate brief that the husband was an adulterer. The trial court made no such finding, however, and the husband denied at trial that he had had committed adultery. In her appellate brief, the wife makes no legal argument, with citation to authority, that the trial court erred by not making a finding of adultery. We therefore have ignored the wife's assertions as to adultery by the husband. See Rule 28(a)(10), Ala. R. App. P.; Dykes, supra; see also Samayamanthula v. Patchipulusu, 338 So. 3d 787, 793 (Ala. Civ. App. 2021) (discussing the presumptions that attend the ore tenus rule).

[4]The husband testified that he had contributed approximately $13,200 to the husband's TSP account during the 11 years before the parties married, and the wife conceded during her testimony in the January 2022 trial that the trial court could subtract "$13,000" from the value of the husband's TSP account. To the extent that the wife argues that the trial court may have erred by excluding the husband's premarriage contributions from the value of the husband's TSP account

the trial court properly limited consideration of the value of the husband's TSP account to the value that existed as of the date of the parties' separation. He relies on the Alabama Comment to § 30-2-51, Ala. Code 1975, the Code section governing the division of retirement assets, specifically its discussion of § 30-2-51(b), Ala. Code 1975. Section 30-2-51(b) states, in pertinent part:

> "The marital estate is subject to equitable division and distribution. Unless the parties agree otherwise, and except as otherwise provided by federal or state law, the marital estate includes any interest, whether vested or unvested, either spouse has acquired, received, accumulated, or earned during the marriage in any and all individual, joint, or group retirement benefits …."

In its discussion of § 30-2-51(b), the Alabama Comment to § 30-2-51 states: "The statute intentionally fails to define the term 'during the marriage,' leaving it to the court to decide based on the evidence and equitable considerations the appropriate starting and ending date of the marriage for all purposes under the statute." Cf. Ex parte Bland, 796 So. 2d 340, 344 (Ala. 2000) (stating that even when a spouse's separate

---

for purposes of the marital-property division, she waived that argument during the January 2022 trial.

property "had been used for the common benefit of the parties during their marriage," "it was nonetheless within the trial court's discretion to determine the most equitable distribution of the parties' property").

In her reply brief, the wife does not respond to the husband's argument regarding the import of the Alabama Comment to § 30-2-51 or the trial court's discretion in equity.[5] Accordingly, any argument that the trial court erred by using the value of the husband's TSP account as of September 2019, rather than as of the date of the April 2021 initial trial or the January 2022 trial as to the division of the husband's TSP account, has been waived. See Rule 28(a)(10) and Dykes, supra. We therefore do not conclude that the trial court erred by dividing the

---

[5]We acknowledge that parts of the Alabama Comment to § 30-2-51 could be read as being in tension with the plain language of § 30-2-51(b), particularly considering the introductory clause to § 30-2-51(b)(1) that speaks in terms of the parties' agreement or the law. See IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So. 2d 344, 348 (Ala. 1992) (noting that an official comment to a statute may be useful in construction but such comment does "not necessarily represent legislative intent"). However, we need not address whether such an argument might have merit to resolve the issues raised in this appeal.

14

husband's TSP account based on its value when the parties separated in September 2019.

The wife next argues that the marital-property division and the periodic-alimony award were inequitable. As to the periodic-alimony award, in <u>Merrick v. Merrick</u>, [Ms. 2200188, Oct. 29, 2021] \_\_\_ So. 3d \_\_\_ (Ala. Civ. App. 2021), this court discussed the application of Ala. Code 1975, § 30-2-57, stating: "The legislature has clearly required that an alimony award be either rehabilitative alimony or periodic alimony and that, to award either type of alimony, the trial court must make certain express findings ...." \_\_\_ So. 3d at \_\_\_. Those requirements include findings as to those matters discussed in § 30-2-57(a), Ala. Code 1975, and, if a periodic-alimony award is to be made, a finding "that rehabilitative alimony is not feasible," § 30-2-57(b)(1), Ala. Code 1975, based upon the trial court's consideration of the various factors described in § 30-2-57(d) & (f), Ala. Code 1975.

The wife testified that she wanted alimony until she could "get on [her] feet," which she stated would take three or four years. The husband agreed that the wife should receive some alimony and that it should be

paid for three or four years. The trial court couched its alimony award in terms of it being "periodic alimony"; however, in light of the wife's testimony and the duration of the alimony award, it may have been rehabilitative alimony, which this court has described as a type of periodic alimony that is intended to allow the recipient spouse to establish a self-supporting status. See Merrick, ___ So. 3d at ___. Nevertheless, the legislature has clearly directed that a trial court must make express findings as to the establishment of the basis for an alimony award and as to the specific type of alimony that is awarded. As in Merrick, "[w]e cannot properly review the award in this case without having before us the express findings required by § 30-2-57." ___ So. 3d at ___. Accordingly, we reverse the trial court's judgment and remand the case to the trial court with instructions that it enter a new judgment in compliance with § 30-2-57, based on the evidence presented at the April 2021 initial trial and at the January 2022 trial as to the division of the husband's TSP account. In light of our reversal on the alimony issue, we pretermit any discussion regarding the equity of the marital property award because "[t]he issues of property division and alimony are

16

interrelated, and they must be considered together on appeal." Turnbo v. Turnbo, 938 So. 2d 425, 430 (Ala. Civ. App. 2006). Instead, the trial court is to reconsider the marital-property division in conjunction with any alimony determination.

The wife next argues that the trial court erred regarding the amount of child support that it ordered the husband to pay. As to this issue, the husband testified at the pendente lite hearing that his gross salary from DHS is $127,000 per year and that he receives $2,100 per month ($25,200 per year) for disability through the Department of Veteran's Affairs ("the VA"). His DHS W-2 form for 2018 indicates that DHS paid him $131,588.85 that year; according to him, that amount included his salary, additional pay for overtime and working on holidays, and some extra pay relating to the parties' move to Puerto Rico. The CS-42 "Child-Support Guidelines" form prepared for the pendente lite hearing indicates that the husband earned $13,066 in monthly gross income, which is consistent with his income stated on the DHS W-2 form for 2018 and his VA income. That form also includes $1,257 as monthly gross income for the wife. The trial court awarded the wife $1,156 per

month as pendente lite child support, and that amount likewise is consistent with the calculations reflected on the CS-42 form that was used in the pendente lite proceeding.

The husband testified at the April 2021 initial trial that his salary was "[a]bout 120," and he again stated that he received $2,100 per month from the VA. The mother's counsel confronted the husband with his DHS W-2 form for 2019, which was not admitted into evidence and is not included in the record. According to the colloquy as to the 2019 W-2 form, the form reflected that DHS had paid the husband $195,677 that year. During the husband's testimony, however, he stated that the 2019 W-2 form indicated that his salary was $132,900, which included some premium pay, and the remaining difference between his salary and the $195,677 was for moving expenses that DHS had paid to move the family and their personal property from Texas to Puerto Rico. Also, the father admitted that he had received a raise in pay in 2020 of approximately one percent of his salary. Assuming that was accurate, his DHS salary had increased to approximately $134,229 ($132,900 + $1,329 = $134,229) in 2020, depending on how much premium pay he may have received.

18

Based on the foregoing, the husband's income had increased after the pendente lite child-support award, even assuming the trial court accepted his explanation regarding the parties' moving expenses. It is possible that the trial court also imputed additional income to the wife based on the evidence and testimony presented at the April 2021 initial trial, particularly since the $1,257 imputed to her on the CS-42 form for the pendente lite proceeding, when considered along with the $750 per month periodic-alimony award, appears to be less than her living expenses, even discounting for some exaggeration of those living expenses. However, we are unable to determine the exact basis for the child-support award because no CS-42 form appears in the record in compliance with Rule 32(E), Ala. R. Jud. Admin., and the testimony presented does not permit us to determine how the trial court calculated $1,156 as the proper award based on the application of the child-support guidelines. Accordingly, we reverse the March 9, 2022, judgment insofar as it awarded the wife child support of $1,156 per month, and we remand the case for the trial court to fully comply with Rule 32(E), including the taking of additional evidence for purposes of calculating the husband's

child-support obligation if the trial court deems that necessary. See Corbitt v. Corbitt, [Ms. 2200786, July 22, 2022] __ So. 3d __ (Ala. Civ. App. 2022).

In light of our reversal of the child-support award, we pretermit consideration of the wife's argument that the trial court erred by granting the husband's request to make an adjustment to his child-support obligation based on the travel expenses that he would incur for visitation with the child. Likewise, we pretermit consideration of her arguments that the trial court erred regarding the medical-insurance adjustment that it used for purposes of child support and by requiring her to maintain a $100,000 life-insurance policy naming the child as the beneficiary, which appears to relate to the issue of securing support for the child should she predecease the husband.

Based on the foregoing, the March 9, 2022, judgment is affirmed as to the date chosen for the valuation of the husband's TSP account. That judgment is reversed, however, as to the award of periodic alimony and the amount of child support to be awarded to the wife, and the case is remanded for the trial court to comply with § 30-2-57 as to its alimony

award, to reconsider the marital-property division in conjunction with any alimony determination, and to comply with Rule 32(E) in determining the amount of the child-support award.

The husband's and the wife's requests for attorney's fees on appeal are denied.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.

Thompson, P.J., and Moore, Hanson, and Fridy, JJ., concur.